# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TAPERED CUTZ, LLC                                        CIVIL NO. 20-89-SDD-SDJ

VERSUS

STATE FARM FIRE & CASUALTY COMPANY

## RULING

Before the Court is Plaintiff, Tapered Cutz, LLC. Motion *in Limine*[1] to exclude opinion testimony from Defendant State Farm's expert Brian Wilson ("Wilson") who is offered as a digital forensic examiner. State Farm opposes the Motion,[2] and Plaintiff has filed a Reply.[3]  For the following reasons, Plaintiff's motion will be granted in part and denied in part.

Plaintiff argues that "Wilson lacks the scientific, technical and/or specialized knowledge that will help the jury understand the evidence or determine an issue. His testimony is also based on his lay opinion and is not supported by any reliable scientific evidence or expertise. His testimony is ultimately not helpful to the jury, who will hear the case and will likely confuse them."[4] Additionally, Plaintiff seeks to exclude opinions set forth in Wilson's supplemental report, dated March 23, 2021, as untimely.[5]

---

[1] Rec. Doc. 16.
[2] Rec. Doc. 17.
[3] Rec. Doc. 23.
[4] Rec. Doc. 16-1, p. 1.
[5] Rec. Doc. 23, pp.1-2.

Defendant State Farm invoked this Court's diversity jurisdiction in this insurance theft loss claim. Plaintiff, Tapered Cutz, LLC, made a loss claim for a theft that occurred at the business location on February 2, 2019. Plaintiff alleges that:

> there was a burglary at the property located at 2621 O'Neal Lane, Baton Rouge, Louisiana 70816 where property owned by Petitioner and insured by the defendant were stolen, including a laptop, hair weave extensions, and accessories, resulting in insurance loss in the amount of $54,312.00. Additionally, there was damage to the rented premises in the amount of $2,129.00.[6]

State Farm perpetuated an Explanation Under Oath ("EUO") from the Plaintiff and requested the original invoices that supported the loss claim for the hair extensions. Plaintiff produced 2 scanned invoices from "Putian Youg Trading Office" in China, one dated 12/10/2018 in the amount of $26,436 and another dated 1/6/2019 in the amount of $25,616.[7]  According to Plaintiff:

> Tapered Cutz sent State Farm electronic copies of the two invoices from Putian Youg Trading evidencing purchase of the bundles of the hair extensions in PDF format as attachments to emails sent to State Farm's adjuster. The electronic copies were generated by "scanning" the two invoices that were included in the box when the hair bundles were received from China.[8]

State Farm ultimately denied the claim for, *inter alia*, suspected fraud.[9] After State Farm denied the claim and Plaintiff filed suit, the Plaintiff produced the 2 original invoices. State Farm engaged Brian Wilson to forensically evaluate and provide an opinion about whether the invoices "were the result of scanning paper documents or were instead created using computer software."[10]  Ultimately, Wilson concluded that concluded that it

---

[6] Rec. Doc. 1-3, ¶ 3.
[7] Rec. Doc. 17, p. 3.
[8] Rec. Doc. 16-1, p. 2.
[9] Rec. Doc. 8, ¶ 16.
[10] Rec. Doc. 17-7, p. 2.

was more probable than not that Invoice #s 2 and 3 were generated from a computer software application and were not scans of paper documents.

Plaintiff contends that, "because State Farm limited Wilson's engagement to the two invoices, Wilson's conclusions are unreliable and should be excluded," and Wilson "utilized flawed procedures and has a lack of education, training and experience," his proposed opinion testimony would not be helpful to the trier of fact. Finally, Plaintiff moves to strike/exclude the opinion in Wilson's supplemental report as untimely.

## I.    Brian Wilson's Qualifications

Wilson holds a B.S. in Computer Science from Southeastern Louisiana University.[11] Since 2005, he has been employed as Digital Forensic Examiner with the Louisiana Department of Justice, Office of the Attorney General, Cyber Crime Unit, and the Internet Crimes Against Children Task Force.[12] Wilson has previously qualified as an expert in the field of "computer forensic examination" and provided opinion testimony in various state and federal courts in Louisiana.[13] In his deposition, Wilson described his job as "extracting data from devices, preserving that data, validating that it's – it's an exact copy of what was on the device."[14]

Plaintiff points out, and the Court agrees, that what Wilson was asked to do in this case differs from what he ordinarily does as an expert.  In this case, Wilson was asked to compare paper documents with their digital or scanned counterparts. Wilson was asked to compare the original invoices produced by Plaintiff after suit was filed to the scanned or digital images that the Plaintiff submitted with the original proof of loss.

---

[11] Rec. Doc. 17-7, p. 3.
[12] *Id.* at 2.
[13] *Id.* at 3.
[14] Rec. Doc. 16-2, p. 7.

Plaintiff argues that even though Wilson has been previously accepted as an expert in court, the methodology employed in this case has never been presented in any court where he has testified as an expert witness.[15] Plaintiff contends that Wilson's methodology is unproven and that it is further unreliable because Wilson did not subject other scanned documents submitted by the Plaintiff in support of its proof of loss to the same examinations. In essence, Plaintiff maintains that Wilson is unqualified to do the type of forensic analysis performed in this case.

Defendant counters that what Wilson was asked to do in this case is "squarely within his wheelhouse – provide your opinion about whether three digital documents (Invoice #s 1, 2, and 3) were the result of scanning paper documents or were instead created using computer software."[16] Defendant is correct that courts have generally rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be qualified as an expert on that issue.[17]

The Court finds that Wilson is qualified by "knowledge, skill, experience, training, or education" to offer an opinion on whether the digital images were, more likely than not, the result of scanning were or created by some other computer software. The question then becomes whether his methodology is reliable and will assist the trier of fact.

## II.    Methodology

Wilson compared the digital files to the paper originals of what the parties refer to as invoice numbers 2 and 3. Wilson obtained information from the Plaintiff about the scanner and process used by the Plaintiff in producing the scanned invoices to use State

---

[15] Rec. Doc. 16-1, p. 6.
[16] Rec. Doc. 17, p. 13.
[17] Rec. Doc. 17, pp. 13-14 (citing *Sexton v. Exxon Mobil Corp.*, 484 F. Supp.3d 321, 334 (M.D. La. 2020).

Farm's claims adjuster. In an attempt to replicate the scan, Wilson engaged Quality Litigation Services ("QLS") to scan the original invoices using "high-quality commercial grade scanning devices and scanning at multiple resolution settings (75 dots per inch (dpi), 200 dpi, 600 dpi, and 1200 dpi)."[18] Wilson also scanned the original invoices using his own personal consumer grade scanning equipment.[19]

Using magnification of the scanned images, he compared the resolution and alignment of the characters of the scanned documents to the original invoices. He determined that the resolution of the scanned invoices submitted by the Plaintiff to the State Farm claims adjuster was "near perfect" compared to the scanned images even those at the highest commercial grade resolution.[20]

The page alignment on the scanned images provided by the plaintiff to the adjuster displayed virtually no page rotation differences. Comparatively, the scans performed by QLS "exhibited a clockwise page rotation."[21]

Finally, Wilson observed that creases on invoices 2 and 3 were did not appear on the digital documents that the plaintiff produced to State Farm but were visible on the scans performed by Wilson.[22]

The plaintiff challenges Wilson's methodology. Plaintiff argues that Wilson's failure to make comparisons of the other claimed documents which were provided digitally by the Plaintiff renders the testing protocol unreliable. The Court disagrees. The narrow scope of the forensic analysis does not render it *per se* unreliable.

---

[18] Rec. Doc. 17, p. 6; Rec. Doc. 17-7, p. 7.
[19] Rec. Doc. 17, p. 6; Rec. Doc. 17-7, p. 7.
[20] Rec. Doc. 17, p. 7; Rec. Doc. 17-7, pp. 9-16.
[21] Rec. Doc. 17, p. 8; Rec. Doc. 17-7, pp. 23-24.
[22] Rec. Doc. 17, p. 9; Rec. Doc. 17-7, p. 16.

The plaintiff argues that Wilson's methodology is flawed because the resolution analysis is a "test he developed himself for this matter in particular matter in particular . . .. had never been employed by him prior to this case, [and] to his knowledge [had] never been employed by anyone else in the scientific field."[23] Plaintiff argues that "the methodology had never been subject to peer review or publication, and therefore did not have accepted, established procedures or protocol for performing this test. . . does not employ procedures that have gained 'general acceptance' within the scientific community, and thus should be viewed with skepticism under the *Daubert* factors."[24] Additionally, Plaintiff maintains that the resolution test was not based on sufficient facts or data. Plaintiff argues that Wilson did not know the qualifications of the person at QLS and did not know what devices the Plaintiff used in scanning and producing the invoices.

The fact that this particular methodology had not been utilized by Wilson in prior cases does not render the methodology unreliable. Wilson attempted to reproduce the scan resolution using multiple resolution dpi's and by using both commercial and consumer grade equipment. The Court does not find that this methodology is unreliable simply because it is the first time Wilson used this method.

As to the sufficiency of the facts/data relied upon, Plaintiff was unable to provide specifics on the type of scanning equipment it utilized, rendering it impossible to attempt to duplicate the Plaintiff's process.[25] State Farm's inability to replicate the scanning process allegedly utilized by the Plaintiff is what gave rise to the methodology employed by Wilson. Specifically, Wilson tried to replicate the scans produced by the Plaintiff using

---

[23] Rec. Doc. 16-1, p. 8.
[24] *Id.*
[25] Rec. Doc. 17, pp. 14-15; Rec. Doc. 17-5, pp. 28-37.

a variety of resolutions and scanning equipment. The methodology employed was neither unreasonable nor unreliable.

Plaintiff advances the same arguments with respect to the "object alignment" methodology employed by Wilson. Again, Plaintiff argues that the alignment test is unreliable because it was "invented by Wilson himself and has never been employed by him or any other expert" and is not based on sufficient facts and data.[26] The Court rejects this argument for the same reasons set forth above.

Plaintiff argues that Wilson's failure to determine whether "metadata was original or altered subsequently to the creation of the document" renders the methodology flawed and unreliable.[27] State Farm counters that the metadata analysis is further support for the conclusion that the invoices submitted digitally by the plaintiff were created and not scanned. "The internal metadata check on the Invoice #s 2 and 3 suggested that Microsoft Excel 2016 was involved in creating the documents, and that they were generated shortly before submission to State Farm."[28] The Court concludes that Wilson did perform a metadata analysis, and his methodology was sufficiently reliable to permit opinion testimony to the jury.

### III.    Wilson's Supplemental Report

In its Reply,[29] Plaintiff moves to exclude Wilson's supplemental report and the associated opinion testimony as untimely. The expert report deadline in this case was December 14, 2020. Wilson's supplemental report was produced on March 23, 2021 in response to questions raised in Wilson's March 16, 2021 deposition. Challenging the

---

[26] Rec. Doc. 16-1, p. 10.
[27] *Id.* at p. 12.
[28] *Id.*
[29] Rec. Doc. 23.

admissibility of the opinion testimony by reply memorandum is irregular and arguably inappropriate. Nonetheless the supplemental report is untimely.

Accordingly, the Court shall GRANT, in part, the Motion *in limine*[30] to exclude opinion testimony covered in the supplemental report dated March 23, 2021. In all other respects, Plaintiff's Motion *in limine* to exclude opinion testimony of Brian Wilson[31] is hereby DENIED, in part.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 15th day of September, 2021.

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[30] Rec. Doc. 16.
[31] Plaintiff moves to exclude the written expert reports. The written reports are hearsay and, therefore, not admissible.